**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | | |
|---|---|---|
| In re: JAMES T. GAVIN and PAULINE GAVIN, | ) | Case No. 10-62822-LYN |
| | ) | |
| Debtors. | ) | |
| | ) | Adv. No. 11-06071 |
| JAMES T. GAVIN and PAULINE GAVIN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID C. McGOWAN, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| | ) | |

## MEMORANDUM

This trial came before the Court on a complaint filed by James T. Gavin and Pauline Gavin ("the Plaintiffs") objecting to the claim no. 14-2 of David C. McGowan ("the Defendant").

### *Jurisdiction*

This Court has jurisdiction over this matter.  28 U.S.C. § 1334(a) & 157(a).  This is a core proceeding. 28 U.S.C. § 157(b)(2)(A).  This Court may enter a final order.  This memorandum shall constitute the Court's findings of fact and conclusions of law as required by Fed. R. Civ. P. 52,

1

which is made applicable in this proceeding by Fed. R. Bankr. P. 7052.

***Facts***

The Plaintiffs are the debtors in this case. They operate a commercial cleaning service and sell novelty apparel on Ebay.[1] The latter is the focus of this dispute. The Defendant, who represents himself in this matter, asserts a claim in this case. He has worked as a graphic artist and cartoonist since 1984. From at least 1997 to the present the Defendant has been involved in selling products created from his designs.

The Plaintiffs and the Defendant have known each other since the late 1980s.[2] The Plaintiffs had a friend who had acquired some old beer labels ("the Original Beer Labels") that had never been used commercially.[3] The businesses that intended to use the Original Beer Labels had ceased to operate and so the copyrights on the labels had expired.[4]

In approximately 2002, the Defendant borrowed the Original Beer Labels from the friend of the Plaintiffs. He repaired and enlarged them so that they could be sold as framed and unframed prints and as images on apparel. The images created by the Defendant from the Original Beer Labels are referred to collectively herein as "the Defendant's Beer Label Images". During 2002 and 2003, the Defendant sold T-shirts the Defendant's Beer Labels Images on them to bars and door-to-door. At some point before 2005, the Defendant returned the Original Beer Labels to the Plaintiffs who returned them to their friend.

---

[1]     Testimony of Mr. Gavin, Trial Tr. 6:13-16 Nov. 21, 2011.

[2]     Testimony of Mr. Gavin, Trial Tr. 6:19 Nov. 21, 2011.

[3]     Testimony of Mr. Gavin, Trial Tr. p. 7-8 Nov. 21, 2011.

[4]     *Id.*

2

During 2003 the Plaintiffs sold T-shirts with the Defendant's Beer Label Images on their Ebay account.  Mr. Gavin testified that he attempted to sell the T-shirts with the Defendant's Beer Label Images on them on Ebay but had little success.  The evidence indicates that the Plaintiffs sold at least four T-shirts with the Defendant's Beer Labels Images on them.[5]

In June of 2004, the Plaintiffs moved to Louisa, Virginia.[6]  Before they moved to Louisa, the Plaintiffs had taken the Defendant into their home on two occasions for a period of approximately two months on each occasion.[7]

In early or mid January of 2005, the Defendant again moved into the Plaintiffs' home and stayed until approximately March 11, 2005, a period of nine weeks.[8]  The Plaintiffs assert that the Defendant had contacted them in December of 2004 and asked if he could visit them.  They assert that they told the Defendant that he could only stay for one week because he owned an RV and the homeowners' president would become upset if it were left in the neighborhood longer than that.[9] The Defendant asserts that he moved into the Plaintiffs' basement in reliance upon an agreement concerning the marketing of a design of a school bus.[10]

---

[5]     *See* Defendant's Ex. A.  The Exhibit consists of a "screen shot" of a spread sheet that purportedly reflects four sales.   The amounts are blurred, but appear to be in the $15.00 to $24.00 range based on other sales and the fees associated with those sales.   The Defendant provided a second screen shot, purportedly indicating additional sales of T-shirts with the Beer Label Images during the period April 15, 2003, through May 1, 2003.   The screen shot lists no T-shirts with Beer Label Images.

[6]     Testimony of Mr. Gavin, Trial Tr. p. 9, Nov. 21, 2011.

[7]     Testimony of Mr. Gavin, Trial Tr. p. 11, Nov. 21, 2011.

[8]     *Id.*

[9]     Testimony of Mr. Gavin, Trial Tr. p. 10, Nov. 21, 2011.

[10]    Defendant's Creditor's Summary, filed as part of proof of claim 14-1, p. 3.

3

The Defendant was unemployed at the time and did not have money to support himself.[11] [12] Accordingly, the parties worked out an arrangement whereby the Plaintiffs would sell some of the Defendant's personal property on Ebay and give the proceeds to the Defendant.[13] They did so. The Defendant does not claim that the Plaintiffs owe him money based on these transactions.

After the Defendant no longer had personal property to sell on Ebay, the parties agreed that the Defendant would print the Defendant's Beer Label Images and frame them using frames and matting materials owned by the Plaintiffs. The Defendant received 50% of the gross revenue from the sales of the prints.[14] The Defendant does not claim that the Plaintiffs owe him money based on this agreement. To the extent that the Defendant does believe that he is owed money by the Plaintiffs for services rendered during this time, no evidence was admitted showing such.

During this nine-week period, the Defendant also designed or completed the school bus image ("the School Bus Design") for use on T-shirts and other apparel and gave the disk with the design on it to the Plaintiffs.[15] As explained below, the Plaintiffs soon abandoned selling the School Bus Design.

In 2008, the Defendant filed a civil suit in state court against the Plaintiffs, seeking to recover damages arising from alleged sales by the Plaintiffs of the Defendant's Beer Label Images.[16] The

---

[11]    The Defendant obtained employment as a golf course attendant, but the work was not scheduled to begin until later in the spring of 2005. It is unclear whether the Defendant ever actually worked for the golf course.

[12]    Testimony of Mr. Gavin, Trial Tr. p. 11, Nov. 21, 2011.

[13]    Testimony of Mr. Gavin, Trial Tr. p. 14, Nov. 21, 2011.

[14]    Testimony of Mr. Gavin, Trial Tr. p. 14, Nov. 21, 2011.

[15]    Testimony of Mr. Gavin, Trial Tr. p. 15, Nov. 21, 2011.

[16]    Statement by the Defendant, Trial Tr. p. 50, Nov. 21, 2011.

civil suit complaint asserted causes of action sounding in breach of contract, misappropriations of services, and unjust enrichment.[17]

On September 30, 2010, the Plaintiffs filed a Chapter 13 petition, initiating the above-styled bankruptcy case.   On March 4, 2011, the Defendant filed a general unsecured proof of claim, designated as claim no. 14-1 by the Clerk of the Court, in the amount of $25,000.00.   On March 21, 2011, the Defendant filed an amended proof of claim in which he asserted that $10,000.00 of the $25,000.00 should be granted priority status based on an employer-employee relationship between the parties.   The Defendant also asserts that his claim was non-dischargeable under 11 U.S.C. § 523(a)(2)(A).

The Plaintiffs filed the above-styled adversary complaint ("the Complaint") and the Defendant filed an answer ("the Answer").

### Discussion.

The burden is originally on the creditor to file the proof of claim.   A claim, proof of which is filed under Section 501, is presumed to be prima facie valid and will be allowed unless a party in interest objects.   11 U.S.C. § 502(a).   The presumption may be overcome by the objecting party only if it offers evidence of equally probative value in rebuttal.   *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991); *In re Fullmer*, 962 F.2d 1463, 1466 (10th Cir. 1992); *In re Allegheny International, Inc.*, 954 F.2d 167, 173-74 (3rd Cir. 1992).   The burden then shifts back to the claimant to produce evidence meeting the objections and establishing the claim.   *In re Knize*, 210 B.R. 773, 779 (Bankr. N.D.Ill. 1997).   A creditor must present evidence that is greater in weight than the evidence presented by the debtor.   In summary, if there is an objection

---

[17]        Defendant's Creditor's Summary, filed as part of proof of claim 14-2, p. 12.

5

to a proof of claim, the burden of proof ultimately falls on the creditor to prove his or her claim

by a preponderance of the evidence.

The business relationship between the parties may be divided into three time periods.

The first is the time leading up to early January, 2005.  The second is the nine-week period when

the Defendant lived in the Plaintiffs' home.  The third is from the time that the Defendant left the

Plaintiffs' home, on or about March 11, 2005, until the present.

During the first time period, that which lead up to January of 2005, the parties agreed on

one or more occasions that the Plaintiffs would sell products with art work designed by the

Defendant.  There is no evidence of a written agreement between the parties during this time, but

both parties admit that  such a business relationship existed.  It appears that the relationship

during this time was one of simple contract.   The Defendant promised to provide art work or

products with art work on them and the Plaintiffs promised to sell those products.  There is no

evidence that a claim arises in this case from the dealings between the parties during this period.

During the second time period, the nine-week period when the Defendant resided at the

Plaintiffs' house, the parties agreed to a number of business arrangements.   First, the Plaintiffs

sold personal property of the Defendant on Ebay.   The Defendant does not assert that any claim

arises from this agreement.  To the extent that the Defendant might assert a claim based on this

agreement, he has provided no evidence of such a claim.

Second, the parties agreed that the Defendant would create the School Bus Design for use

on T-shirts.  Mr. Gavin testified that the Plaintiffs marketed the School Bus Design only briefly

because there was a fatal school bus accident in early February of 2005 and they believed that it

6

would be in poor taste to pursue the idea.[18]  There is evidence that the image did appear briefly

on the Plaintiffs's website, but not after February 5, 2005.[19]  The Plaintiffs assert that the School

Bus Design was in compensation for a utility bill that the Plaintiffs had paid for the Defendant in

or about 2003.  Mr. Gavin also testified that he gave the Defendant fifty dollars ($50.00) when

the Defendant left the Plaintiffs' house.[20]  It is concluded that the Plaintiffs never generated

income from the School Bus Design and that the Defendant was compensated for the design

itself.  The Defendant presented no evidence that would lead the Court to believe that he has a

claim based on his creation of the School Bus Design.

     The third agreement between the parties during the nine-week period concerned the

printing and framing of the Defendant's Beer Label Images.  The parties agreed that the

Defendant would print and frame the images as they were sold on Ebay by the Plaintiffs and split

the gross revenue between them.  There is no evidence of debt arising from this agreement.

     The Defendant also asserts that, during the nine-week period, the relationship was one of

employer-employee and partnership.  In determining whether an employer-employee

relationship exists there are four elements that are considered; (1) Selection and engagement of

the employee, (2) payment of wages, (3) power of dismissal and (4) the poser of control of the

employee's actions.  12B Michie, *Master and Servant*, § 3 (2011) (And cases cited therein.)  The

first three elements are, in some form, common to partnership agreements.  And so, they are not

telling in this instance.   It is however, the last element, the power of control, that is the most

---

[18]      Testimony of Mr. Gavin, Trial Tr. p. 17, Nov. 21, 2011.

[19]      *See* Defendant's Exhibit D.

[20]      Testimony of Mr. Gavin, Trial Tr. p. 16, Nov. 21, 2011.

7

significant element.  *Id.* (And cases cited therein.).  In this case, the Defendant worked on his

own and was in control of the decisions concerning the development and improvement of the

images.  There is no evidence that the Plaintiffs controlled when the Defendant worked or how

he accomplished his tasks.  He also made the decisions concerning the matting and framing of

the prints that were sold.   There was no employer-employee relationship between the parties.

The third period of time is from March 12, 2005, to the present.  The Court cannot

conceive of any circumstances after March 11, 2005, under which the parties would have agreed

to any form of business relationship.  First, the parties were no longer on speaking terms.  Mrs.

Gavin did not even speak with the Defendant during the last two weeks that he lived in the

Plaintiffs' house.  Second, neither of the Plaintiffs agree that there was such a relationship.  Mrs.

Gavin testified that she had absolutely no business agreement with the Defendant at the time or

any time thereafter.[21]   Especially telling is a contemporaneous email from Mrs. Gavin to the

Defendant dated March 25, 2005, in which she writes:

> Dave: I haven't answered your original email because I was thinking about how to
> respond.  Any agreement to sell or not to sell beer label was between you and Jim.
>
> I will cease with any of the reprints that you and Jim were selling after this round of
> listings expires.  But, I will continue with any other the one [sic] that either Shannon or a
> commissioned artist repairs.  I will be getting "labels" from John the Beer Guy that I will
> be listing in the future.  The images of these "reprints" do not belong to anyone. . . only
> the actual labels belong to someone.[22]

Three things are clear from this communication.  First, at the time that the parties parted ways,

Mrs. Gavin had absolutely no intention of continuing in business with the Defendant.   Second,

she already had a plan, and divulged that plan to the Defendant, to sell images that were repaired

---

[21]        Testimony of Mr. Gavin, Trial Tr. p. 40, Nov. 21, 2011.

[22]        *See* Defendant's Exhibit I.

by artists other than the Defendant.  Third, the Plaintiffs had a source for old beer labels other than the Defendant's Beer Label Images.

The second reason that the Court concludes that there was no agreement between the parties during the third period is that one would expect any agreement to have been memorialized in writing.  The parties were going their separate ways.  There was friction between them.  If they had come to an agreement, they would have surely reduced it to writing. In the absence of any such writing and given that friction, it cannot be concluded that the parties intended to form or continue a business relationship after March 11, 2005.  It is concluded that there was no business relationship between the parties after the Defendant left the Plaintiffs' house.

The Defendant asserts a number of alternative theories on which his post-March 25, 2005, claim might be based.  Two of the theories, breach of a partnership agreement and an employment relationship, require a consensual agreement.  As noted, the parties did not enter into any agreement after March 11, 2005.   This eliminates both a partnership and employment relationship.  The Defendant also alleges fraud.  In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Fed.R.Civ.P. 8(b).   The only representation that the Defendant asserts the Plaintiffs made that would give rise to fraud is that they needed the Defendants Beer Label Images to complete the orders from the advertisements that were then posted on Ebay.  It was not a misrepresentation and the Defendant was not damaged by it.

The Defendant alleged two other causes of action: (1) misappropriation of graphic works; and (2) unjust enrichment.  The Defendant alleges misappropriation generally.

The VUTSA requires that in a claim of trade secret misappropriation the Plaintiff must allege sufficient facts to establish both the existence of a trade secret and the misappropriation of mat[erial] trade secret.  Va.Code § 59.1–336, *et seq. Microstrategy Inc. v. Li.,* 268 Va. 249, 363, 601 S.E.2d 580, 588 (2004).

*BB&T Ins. Services, Inc. V. Thomas Rutherfoord, Inc*. 80 Va. Cir. 174, 2010 WL 7373709 (2010).  It is not disputed that the Defendant held trade secrets in the form of the Defendant's Beer Label Images.   What is not proved, however is that the Plaintiffs misappropriated those images.

The Defendant asserted that the Plaintiffs used the Defendant's Beer Label Images to make the prints that they sold after March 11, 2005.  Mr. Gavin testified that such was not the case.[23]  He testified that he had used the Original Beer Labels and a Photoshop program to create his own labels.  The Defendant asserted that the Plaintiffs' friend that owned the labels had sold them to a fourth party.  Mr. Gavin testified that he simply retrieved the labels from the fourth party and created his own images.[24]  Mrs. Gavin indicated to the Defendant that the Plaintiffs had another source for the images at the time that they went their separate ways.[25]  He testified that he used those images to create the prints that he sold after March 11, 2005.  The Court has no reason to doubt his testimony and the Defendant has not proved the statement to be false.  Accordingly, it is concluded that after March 11, 2005, the Plaintiffs did not use the Defendant's Beer Label Images.

The Defendant also alleges a cause of action sounding in unjust enrichment.

---

[23]     Testimony of Mr. Gavin, Trial Tr. p. 28, Nov. 21, 2011.  Also see Defendant's Exhibit D, an email from one of the Plaintiffs clearly exhibiting irritation with the Defendant and stating in part "YES, I TOLD YOU I WASN'T INTERESTED IN SELLING BEER LABEL PRINTS AND I'M NOT!  WHAT IS THE PROBLEM?"

[24]     Testimony of Mr. Gavin, Trial Tr. p. 29, Nov. 21, 2011.

[25]     *See* footnote 22, *supra*, and accompanying text.

Unjust enrichment also occurs when someone retains a benefit that otherwise would not have been retained but for some wrongful act. *See, e.g., Galloway Corp. v. Wise*, 244 Va. 344, 346(1992); *Richardson v. Richardson*, 242 Va. 242, 245-46 (1991).

*Makel v. Tredegar Trust Co.*, 69 Va. Cir. 204, 2005 WL 34899768 (2005).  If the Plaintiffs did

not used the Defendant's Beer Label Images, then they did not commit a wrongful act and they

could not have been unjustly enriched.

At various point in this litigation, the Defendant assets that a portion of his claim is

entitled to priority status and that the entire claim is non-dischargeable.  It is not necessary to

consider these assertions because the Defendant's claim will be disallowed.

### Conclusion

The Plaintiffs' objection to the Defendant's proof of claim is sustained.   An appropriate

judgment shall issue.

Upon entry of this memorandum the Clerk shall forward copies of this memorandum to

David C. McGowan, C. Lamar Garren, Esq., and the Chapter 13 trustee.

Entered on this  30th  day of January, 2012.

William E. Anderson
United States Bankruptcy Judge

11