**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | |
|---|---|
| In re: JAMES T. GAVIN and PAULINE GAVIN, | ) Case No. 10-62822-LYN |
| ) | |
| Debtors. ) | |
| ) | Adv. No. 11-06071 |
| JAMES T. GAVIN and PAULINE GAVIN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| DAVID C. McGOWAN, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| ) | |

**MEMORANDUM and ORDER**

This matter comes before the Court on a motion ("the Motion") by David C. McGowan ("the Movant") to amend or make additional findings of fact in the memorandum ("the Original Memorandum") accompanying the judgment ("the Judgment") of this court entered on January 30, 2012, in favor of James T. Gavin and Pauline Gavin ("the Debtors") which Judgment disallowed the Movant's claim no 14-2. The Motion also asks the court to make additional findings of fact. The Motion is brought under Fed.R.Civ.P. 52(b) which is made applicable by Fed.R.Bankr.P. 7052. The

1

Motion will be denied.

## *Jurisdiction*

This Court has jurisdiction over this matter. 28 U.S.C. § 1334(a) & 157(a). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A). This Court may enter a final order. This memorandum shall constitute the court's findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, which is made applicable in this proceeding by Fed. R. Bankr. P. 7052.

## *Facts*

On January 30, 2012, the Judgment was entered in this case disallowing the claim of the Movant. The Judgment was supported by an accompanying memorandum ("the Original Memorandum"). The facts recited therein are incorporated herein by reference and, accordingly, will not be repeated here. Terms used in the Original Memorandum are used herein. The Defendant in the adversary proceeding (the Movant) has filed a motion to amend or make additional findings of fact. The Movant did not set the matter down for hearing. These facts notwithstanding, the court will consider the motion.

## *Discussion.*

As a preliminary matter, the Motion was incorrectly filed in the parent case and not in the above-styled adversary proceeding. The Original Memorandum and the Judgment were entered in the adversary proceeding. Accordingly, the clerk will be instructed to file a notice in the adversary proceeding that the Motion was filed in the parent case. Further, the clerk shall file this memorandum and order in the adversary proceeding.

The Motion is brought under Fed.R.Civ.P. 52(b) which is made applicable in this proceeding by Fed.R.Bankr.P. 7052. Rule 52 provides that the court, in a nonjury trial, shall

make findings of fact. Rule 52 does not provide for reconsideration of findings of facts by the trial court. Accordingly, this court cannot consider the Movant's Motion on that grounds.

Nor can the Motion be a motion to amend the judgment under Fed.R.Civ.P. 59 as made applicable by Fed.R.Bankr.P. 7059.[1] A new trail will not be granted on grounds not called to the court's attention during the on the basis of a theory not urged in the first trial unless the error was so fundamental that gross injustice would result. 11 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2805. *See Cool Light Co. V. GTE Products Corp.*, 832 F.Supp. 449 (D. Mass.) *aff'd*, 24 F.3d 349 (, *cert. denied* 115 S.Ct. 498, __ U.S. __ , 130 L.Ed.2d 408 (A party who acquires information supportive of its claim for a mistrial or new trial is precluded from such relief if that party fails to present the information at trial but, instead, waits until it loses before presenting the matter to the court.). *Also see Joy Technologies, Inc. V. Flakt, Inc.*, 820 F.Supp. 802 (D.Del. 1993) (Courts are not inclined to grant a motion for new trial even

---

[1] Rule 59 provides in full:

(a) In General.(1) Grounds for New Trial. The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:
    (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or
    (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.
    (2) Further Action After a Nonjury Trial. After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.
(b) Time to File a Motion for a New Trial. A motion for a new trial must be filed no later than 28 days after the entry of judgment.
(c) Time to Serve Affidavits. When a motion for a new trial is based on affidavits, they must be filed with the motion. The opposing party has 14 days after being served to file opposing affidavits. The court may permit reply affidavits.
(d) New Trial on the Court's Initiative or for Reasons Not in the Motion. No later than 28 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion. After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion. In either event, the court must specify the reasons in its order.
(e) Motion to Alter or Amend a Judgment. A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

in the case of grievous error if moving party made no effort to bring the alleged error to the court's attention at the time it occurred.). In this instance the Movant was in possession of the information that he now asks the court to consider. This must be so because he attached that same information to his proof of claim. Consequently, it is not proper to consider the information because the Movant made no effort to bring it to the court's attention at trial.

In the Motion, the Movant asks the court to consider a number of documents that he attached to his proof of claim, but failed to introduce at trial. The Judgment would be unchanged even if those documents were specifically considered. In fact, the court reviewed the attachments to the proof of claim when preparing the Original Memorandum and Judgment.

The Movant first asks the court to consider, or reconsider, Exhibits 1-L, 2-L, and 3-L which were attached to the Movant's proof of claim. Exhibit 2-L is an email from the Movant to both Mr. and Mrs. Gavin. It reads in part:

> Since you "both" said that you were not going to sell beer labels I took you for your word. **And I have been working hard here to get the beer labels back on my ebay account. I have cab[le] modem being installed this week, working on repairing the rema[i]nder of the labels, written the text for ads, and set up my Pay-Pay account...** Only to find that Pauline is listing more labels on her store.

In Exhibit L-1, Mr. Gavin replied:

> WHY ARE YOU DIRECTING YOUR QUESTIONS AT ME?  YES, I TOLD YOU I WASN'T INTERESTED IN SELLING BEER LABEL PRINTS AND I'M NOT!

In Exhibit L-3, Mrs. Gavin replied:

> Dave: I haven't answered your original email because I was thinking about how to respond. Any agreement to sell or not to sell beer label was between you and Jim [Mr. Gavin].
> I will cease with any of the reprints that you and Jim were selling after this round of listing expires. But I will continue with any other the one [sic] that either Shannon or a commissioned artist repairs. I will also be getting "labels" from John the Beer Guy that I will be listing in the future. The images of these "reprints" do not belong to anyone ...

4

only the actual labels belong to someone. [Ellipses in original.]

The Movant asserts that the court considered the emails of the Debtors, but did not consider his email. In the Original Memorandum, the court wrote the following concerning Mrs. Gavin's email:

> Three things are clear from this communication. First, at the time that the parties parted ways, Mrs. Gavin had absolutely no intention of continuing in business with the Defendant. Second, she already had a plan, and divulged that plan to the Defendant, to sell images that were repaired by artists other than the Defendant. Third, the Plaintiffs had a source for old beer labels other than the Defendant's Beer Label Images.

Memorandum at p. 8-9. The Movant asserts that the court's conclusions regarding Mrs. Gavin's email would somehow be different if his email is considered. The conclusion would remain unchanged.

The Movant's email asserts that he was, on March 25, 2005, attempting to sell his beer label images. This first assertion, that the Movant intended to sell the Beer Label Images, is irrelevant. It has nothing to do with his relationship with the Debtors. It did not prohibit the Debtors from selling the same images, if those images were created from beer labels owned by a third party.

The Movant also asserts that the Debtors told him they would not be selling beer labels in the future and that he knows that this is not true. His second assertion, that they told him that him that they would not sell beer images in the future, is both false and irrelevant. First, one need only read Mrs. Gavin's email to ascertain that she intended to sell images acquired from another source. Second, the Gavin's owed no duty to tell the Movant what they intended to do in their business ventures. Further, their business was, and is, none of his business, except to the extent that they used the Beer Label Images, a fact that he was unable to prove at trial.

The Movant also asserts, again, that the Debtors were selling the exact same beer labels as those that provided to them.  As noted, the issue is not whether they sold the same images, but whether they sold labels created from the Beer Label Images that the Movant produced. And, again as noted, the court concluded that they did not.  Nothing that the Movant argues regarding Exhibits 1-L, 2-L and 3-L supports altering or amending the Judgment.

The Movant also asks the court to consider Exhibit 1-J and Page 8, Paragraph 4, in his Creditor's Summary.[2]  Exhibit 1-J contains photographs taken in February of 2005 of two pieces of original art work and images of beer labels in the Debtors' store.  In the Creditor's Summary, the Movant asserts that Exhibit 1-J "is in direct conflict with Mrs. Gavin's testimony and her March 25, 2005 email where Mrs. Gavin asserts that she was not in any agreements with me before or after March 11, 2005 in re: Beer Labels, or any other agreement with me for that matter."

The Court disagrees with the Movant's conclusion.  First, there is no doubt that neither of the Debtors had any business relationship with the Movant after March 25, 2005.  Second, Mrs. Gavin's March 25, 2005, email states that the agreement with the Movant prior to March 25, 2005, was with Mr. Gavin and not with her.  The photographs in Exhibit 1-J do not demonstrate that the opposite is true.  Further, it is, and was, absolutely irrelevant to the disposition of this dispute, whether the Movant entered into an agreement with Mr. Gavin or Mrs. Gavin or both of them prior to March 25, 2005.

The Movant also asks the court to consider Page 12, Section 12, in his Creditor's Summary.  In Section 12, the Movant asserts "[o]n April 12, 2007, Debtor Pauline Gavin sent email to Creditor (David McGowan) that she is going to sell on eBay or "trash" my two (2)

---

[2] The Creditor's Summary is an attachment to, and part of, the Movant's proof of claim.

original acrylic paintings that had been on consignment in the Debtors retail store! This malicious and threatening email caused me great concern since I was now working long hours as a construction laborer, and I could not use my company truck for personal business to drive to Louisa to recover my paintings before the deadline imposed by her. On the deadline date, my friend who lives in Louisa was able to recover my two paintings for me before they were harmed or sold on eBay by the Debtors."

The argument regarding the acrylic paintings is irrelevant. First, this assertion was not made at trial nor was any evidence in support of the assertion introduced at that time. Second, the Movant received his paintings back. Consequently, he suffered no damages. Third, the court construes the communication by the Debtors to be a further attempt to end all relations between the parties, not a threat to destroy property of the Movant.

Section 12 also states that "[m]y four (4) framed Beer Label Art Prints were never recovered." Again, this was not raised at trial. Further, as noted in his Motion, the Debtors made attempts to return the framed prints to him. In Paragraph 15 of the Motion, the Movant states:

> [I]n her April 18, 2007 email (exhibit 2-P) [Mrs. Gavin] describes to me that my "Fort Pitt" [beer label] was "shoplifted" See: exhibit: 3-P Fort Pitt label Art Print by McGowan eBay 2006.
> Mrs. Gavin then states in her April 18, 2007 email that the other 3 (Old Virginia Beer Label Art Print, Braumeister Beer Label Art Print, and a Blatz Beer Label Art Print Collage) are probably in boxes in their garage, and invited me to look through the boxes to find them if I so choose to do so.

The Movant could have simply retrieved the prints. He declined to do so. There are no damages here.

The Movant also asserts that he was not paid for painting a desk. He did not raise this

issue at trial. Consequently, the Debtors could not rebut it nor could they assert defenses such as a statute of limitations. Further, there is no assertion concerning an agreement regarding this work, nor an agreed upon price regarding the same.

The Movant also refers to Exhibit 1-F, which contains a February, 2005, listing of beer labels on Mr. Gavin's ebay site. If accepted for what it purports to be, the list only demonstrates that the Debtors listed some of the Movant's work in that month. This is an accepted fact. As noted in the Original Memorandum, no claim arose from the dealings between the parties during a nine week period that included February of 2005.

> During the second time period, the nine-week period when the Defendant resided at the Plaintiffs' house, the parties agreed to a number of business arrangements. First, the Plaintiffs sold personal property of the Defendant on Ebay. The Defendant does not assert that any claim arises from this agreement. To the extent that the Defendant might assert a claim based on this agreement, he has provided no evidence of such a claim.

Original Memorandum at p. 6. The list does not give support to the claim that any debt was owed arising from this arrangement.

The Movant also asks the court to consider a number of the Exhibits attached to the Creditor's Summary that he believes proves that Mrs. Gavin agreed to sell the Beer Label Images. The request misses the point completely. If Mrs. Gavin or Mr. Gavin actually sold Beer Label Images prior to March 11, 2005, or March 25, 2005, the Movant was paid for those sales. Consequently, there are no damages and judgment cannot be entered in the Movant's favor.

Finally, the Movant asks the court to grant him compensation for "School Bus Design". The request is based on Exhibit 2-C, which was not offered for admission at trial. Exhibit 2-C does appear, on its face, to support the assertion that the Debtors used the School Bus Design in June of 2006 and August of 2008. Mr. Gavin testified at trial, however, that the Movant

provided the School Bus Design in return for the payment of one of his previous utility bills. Mr. Gavin also testified, during the discussion of the School Bus Design, that he gave the Movant $50.00 when the Movant left the Debtors' house.[3]  The court concluded that the Debtors

---

[3]  Following is Mr. Gavin's testimony concerning the School Bus Design:

> Counsel for the Debtors: Other than that arrangement with regard to those art prints of the beer labels, did you ever have any other arrangement with him where you were going to split any kind of profits?
> Mr. Gavin: We had talked about something dealing with a school bus design. Okay? When he did come to our home, all right, he owed us a design in payment of an electric bill we had paid for him about two years prior to that. So that goes back to about 2003, I guess.
> Counsel: Owed you a design for what?
> Mr. Gavin: We paid an electric bill for him.
> Counsel: And what was the design?
> Mr. Gavin: Well, the design we asked him for -- he said, I'll pay you back, I'll pay you back for the electric bill. And my wife just told him instead of paying us back the money, why don't you just come up with a good design for us. My wife liked flamingos then.
> Counsel  Design for what?
> Mr. Gavin: For T-shirts. I was selling T-shirts. I was selling flamingo designs along with many other designs on eBay. We changed that request when we heard from Dave down here in Central Virginia. We asked him if he had come up with it yet. This is two years later. He hadn't done anything with it yet. We hadn't seen anything.  So we asked him when he came to visit, could he bring the design and could he change it instead to his school bus design, because I was selling school bus designs too on eBay. He said no problem. He came to our house with the sketch. I asked him to add some text to it. He did that. And I just considered that, you know, my design for hire, barter, or whatever you want to call it. And, in fact, before he left our house, I paid him an additional $50 because he didn't have any gas for his RV and I just felt that I wanted to help him out further. And he gave me the disk with the design on it. That was the only other thing.
> Counsel: Other than the idea of selling beer label art prints on eBay and the school bus design that he paid you to pay off an earlier bill that he owed you,  other than those two things, were there any other financial arrangements?
> Mr. Gavin: No. We had talked about -- he said, Jim, you can spin the school bus design and approach local schools, customize it with the school names on it. And I said, Well, I'll give it a shot. I mean, I went down to a little school bus garage in Louisa because I wanted to approach them anyway with the other school bus designs. I had to see if they were interested, and I mentioned that to them, too.  And so I told David that if we did have to customize anything with a school name on it, that I realized that then he was doing additional work that wasn't agreed upon originally.
> Counsel: Did that happen?
> Mr. Gavin: It didn't happen because there was a fatal school bus crash early February of 2005. And we both agreed right then and there that it was just in poor taste if we would have pursued that. And we just dropped the whole idea, so nothing materialized.
> . . .
> Counsel: And his production for you of the school bus design, that was to pay off an earlier debt; is that correct?
> Mr. Gavin: Correct.

Testimony of Mr. Gavin, transcript of hearing, pp. 15-17.

did not owe the Movant for the use of the School Bus Design.  Exhibit 2-C does not support a reason to hold otherwise.

**ORDER**

The Motion for a new trial or to amend the Judgment rendered in the above-styled adversary proceeding shall be, and hereby is, denied.

The Clerk shall file a notice in adversary proceeding that the Motion that is the subject of this memorandum was filed in the Parent case.  Further, the clerk shall file this memorandum and order in the adversary proceeding.

So ORDERED.

Upon entry of this memorandum and order the Clerk shall forward copies of this memorandum and order to David C. McGowan, C. Lamar Garren, Esq., and the Chapter 13 trustee.

Entered on this   17TH   day of April, 2012.

_____
William E. Anderson
United States Bankruptcy Judge